UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action 16-40-HRW

OWNERS INSURANCE COMPANY,                                              PLAINTIFF,

v.                          **MEMORANDUM OPINION AND ORDER**

FRONTIER HOUSING, INC.,
STEPHEN BURTON and PAMELA BURTON,                                      DEFENDANTS.


This matter is before the Court upon Owners Insurance Company's and Frontier Housing, Inc.'s cross motions for summary judgment [Docket Nos. 22 and 24]. The motion has been fully briefed by the parties [Docket Nos. 24-1, 25, 26, 27 and 28] and for the reasons stated herein, the Court finds that Owners Insurance Company is entitled to summary judgment and does not owe Frontier Housing Inc. a duty to defend or indemnify as to the claims asserted against Frontier Housing Inc. by Stephen Burton and Pamela Burton.

**I.**

This case arises from a construction contract between Defendants Frontier Housing, Inc. ("Frontier") and Stephen and Pamela Burton ("The Burtons") for the construction of their home in West Liberty, Kentucky. The original contract set the price of constriction around $200,000. However, a result of alleged change orders and upgrades, the legitimacy of which are hotly contested by the Burtons, the ultimate price of the construction was upwards of $400,000. According to Frontier, the Burtons owe it $250,000. According to the Burtons, they owe Frontier about $17,000.

The matter resulted in litigation. On December 10, 2014, Frontier filed a mechanics lien against the Burton's property. Subsequently, Frontier filed its breach of contract action in the Morgan Circuit Court against Stephen Burton and Pamela Burton, styled *Frontier Housing Inc., v. Stephen Burton and Pamela Burton*, Commonwealth of Kentucky, Morgan Circuit Court, Civil Action No. 15-CI- 0062.

In response to the Complaint filed against them, the Burtons asserted a counterclaim against Frontier, alleging breach of contract, negligent misrepresentation, negligent infliction of emotional distress, fraud, forgery, intentional misrepresentation, intentionally filing Mechanics and Materialman's Lien based on false information, the intentional infliction of emotional distress, intentional violations of the Kentucky Consumer Protection Act KRS §§ 367.110, et. seq., the tortuous breach of contract and abuse of process and slander of title.

Owners Insurance Company ("Owners") issued a commercial policy of general liability insurance Policy No. 52454382, ("Policy") to Frontier, which was in effect from October 2014 to October 2015. [Docket No. 24-3].

On July 10, 2015, counsel for Frontier, John Ellis, sent a letter to Plaintiff giving notice of the Burtons' claim against Frontier presented in Counterclaim.

On August 18, 2015, Owners advised Frontier that it intended to provide a defense under a reservation of rights but also advised that some or all of the allegations contained in the Counterclaim may not be covered under the policy. Specifically, Owners asserted that the alleged misrepresentations by Frontier, as well as other intentional acts, are not covered under the policy it issued to Frontier.

Pursuant to that policy, Owners filed this declaratory judgment action, seeking a judicial determination as to whether it owes a duty of defense or indemnity to Frontier for the Burtons' counterclaim.

Both Owners and Frontier seek summary judgment.

## II.

Whether a defense or coverage is owed under an insurance policy is a question of law. The basic principles governing the interpretation of an insurance policy as well established. Clear an unambiguous terms must be construed according to the "plain and ordinary" meaning. Ambiguities are to be construed in favor of the insured, yet there is no requirement that every doubt be resolved against the insurer. Further, a court may not enlarge or restrict coverage under the guise of contract construction; exceptions and exclusions should be construed to make insurance effective, unless they run afoul public policy. *See generally, Ky. Assoc. of Counties All Lines Trust Fund v. McClendon*, 157 S.W.3d 626 (Ky. 2005).

## III.

With these tenets in mind, the Court will examine the language of the Policy. Section I, of the Policy, entitled "Coverages", provides coverage for "bodily injury" or "property damage":

**1. Insuring Agreement**
**a.**   We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. We may at our discretion investigate any claims or "occurrence" and settle any claim or "suit" that may result. But:

(1)The amount we will pay for damages is limited as described in

Section **III** – Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expense under Coverage **C**.

No other obligation or liability to pay sums or perform acts of services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1**, or Section **II** – Who Is An Insured and "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**, of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**d.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

[Docket No. 24-3, pp. 48-49].

Section V defines "bodily injury" and "property damage" as follows:

> **4.** Bodily Injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.
>
> . . . .
>
> **18.** "Property Damage" means:
> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or **b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* at p. 67.

Per the terms and conditions of the Policy, the events alleged by Stephen Burton and Pamela Burton in their Counterclaim do not consist of either "bodily injury" or "property damage" as defined by the Policy and therefore, no coverage is afforded for the events set forth in the Counterclaim.

The only claim asserted by the Burtons which could possibly invoke coverage would be the negligent infliction of emotional distress. However, Kentucky law precludes coverage in this instance because the Burtons have not provided medical evidence in support of their claim. Without expert medical proof of the alleged emotional distress, their claim fails. See *Osborne v. Keeney*, 399 S.W.3d 1, 18 (Ky. 2012) (holding "a plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment."). General statements of stress or concern do not suffice. *Id.* Both Stephen Burton and Pamela Burton admitted that they did not receive treatment for their alleged emotional distress. [Docket Nos. 24-4 and 24-5, Deposition of Pamela Burton, p.106, l. 7-15, and Deposition of Stephen Burton, p. 148, l. 6-10]. Nor have experts been retained in this regard.

The clear terms of the Policy limit coverage to either "bodily injury" or "property damage", neither which is alleged against Frontier. Therefore, there is no coverage.

In addition, the Policy explicitly excludes intentional acts from coverage:

> This insurance does not apply to:
> **a. Expected Or Intended Injury**
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[Docket No. 24-3, p. 49].

Fraud, forgery, intentional misrepresentation, intentionally filing Mechanics and Materialman's Lien based on false information are intentional acts with expected and intended injury properly excluded from coverage under the Policy.

Further, the "Crime General Provision" endorsement excludes from coverage events alleged in the counterclaim. The Endorsement states:

> **A. GENERAL EXCLUSIONS:** We will not pay for loss as specified below:
>
> **1. Acts Committed by You and Your Partners**: Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.
>
> **2. Governmental Action**: Loss resulting from seizure or destruction of property by order of governmental authority.
>
> **3. Indirect Loss:** Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:
>
> a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.
> b. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.
> c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

6

**4. Legal Expenses:** Expenses related to any legal action.
**B. GENERAL CONDITIONS**

**1. Concealment, Misrepresentation or Fraud:** This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

a. This insurance;
b. The Covered Property;
b. Your interest in the Covered Property; or
c. A claim under this insurance.

*Id.*, pp. 31-32.

The Burtons' claims of fraud, forgery of the alleged change orders and other intentional acts including intentional misrepresentation, intentionally filing Mechanics and Materialman's Lien based on false information, and intentional violations of the Consumer Protection Act KRS §§ 367.110, et. seq., the intentional infliction of emotional distress, abuse of process and slander of title against Frontier Housing, as set forth in their Counterclaim are excluded from coverage under the Policy. Specifically, the policy provides that no coverage is provided for intentional acts and likewise no coverage is provided for criminal acts. These exclusions are clearly stated in the policy and are unambiguous; therefore, they must be enforced as written.

In its dispositive motion, Frontier makes vague and somewhat puzzling arguments. First, it contends that the Policy should be interpreted so as to favor the insured the insured. However, this misstates the law which requires that there be an ambiguity in policy language, before any favoritism is permitted. *See generally, Bituminous Casualty Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633. In the absence of an ambiguity, the terms of the policy will be construed according to their "plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan,* 10 S.W.3d

129, 131–32 (Ky.1999). The Policy at issue is not ambiguous, in any light.

Frontier also appears to contend that it may be entitled to coverage under the Employee Dishonesty Coverage form in the policy. Yet, there is no basis for coverage in this regard. The Employee Dishonesty Coverage form provides coverage for Frontier's losses of Frontier's property caused by the act of Frontier's employees *against* Frontier. The Burtons' Counterclaim, on the other hand, concerns only Frontier's actions against the Burtons and the Burtons' property. By its own terms, this form does not apply to these claims.

Nor is Frontier entitled to a defense or coverage for an "advertising injury," as it suggests in its dispositive motion. Frontier's Motion for Summary Judgment cites a section of the policy providing coverage for an "advertising injury" and specially references the following definition: "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a persons or organizations goods, products or services in your "advertisement." Frontier's Motion fails, however, to note the following definition of "advertisement" found in policy:

> "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products, or services, for the purpose of attracting customers or supporters. For purposes of this definition:
> a. notices that are published include material placed on the internet, or similar electronic means of commutations; and
> b. regarding websites, only that part of website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement."

[Docket No. 24-3].

Nothing in the Burton's Counterclaim references a Frontier Housing advertisement. There is no evidence, allegation, or even suggestion that any Frontier advertisement ever or in

any way slandered or libeled the Burtons or disparaged the Burton's goods, products or services. Because there is no viable claim under the advertising injury coverage found in the policy, there is no duty to indemnify or defend Frontier pursuant to that coverage.

The Court is mindful that the primary purpose of a general liability policy is to provide comprehensive insurance. *See generally, Brown Foundation Inc. v. St. Paul Fire & Marine Insurance Co.,*, 814 S.W.2d 273 (Ky. 1991). However, a court may not "make a new contract for the parties under the guise of interpretation or construction but must determine the rights of the parties according to the terms agreed upon by them." *Cheek v. Commonwealth Life Ins. Co.*, 277 Ky. 677, 686, 126 S.W.2d 1084, 1089 (1939). Unless prohibited by statute or public policy, exclusions from coverage are valid and enforceable. If an exclusion clearly applies and defeats the existence of coverage, the insurer has no duty to provide a defense to the insured. *Midwestern Ins. Alliance, Inc. v. Clarendon National Ins. Co.*, 7 S.W.3d 396 (Ky. App. 1999); *see also Thompson v. West Am. Ins. Co.*, 839 S.W.2d 579, 581 (Ky.App.1992) (citing *Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521 (Ky.1987)) ("The allegations of the complaint cannot compel a defense if coverage does not exist. The obligation to defend arises out of the insurance contract, not from the allegations of the complaint against the insured.").

## IV.

The Policy issued to Frontier Housing does not provide coverage for events set forth by the Burtons in their Counterclaim and are expressly excludes from coverage under the Policy. Based on the terms, condition, and exclusions of the Policy, including those set forth above, Owners has no obligation to provide a defense to Frontier Housing in response to the counterclaim filed by the Burtons in *Frontier Housing, Inc. v. Stephen Burton and Pamela*

*Burton*, Morgan Circuit Court, Civil Action No. 15-CI-00062, or to otherwise indemnify it for the counterclaims set forth in *Frontier Housing, Inc. v. Stephen Burton and Pamela Burton*, Morgan Circuit Court, Civil Action No. 15-CI-00062.

Accordingly, **IT IS HEREBY ORDERED** that Owners Insurance Company's Motion for Summary Judgment [Docket No. 24] be **SUSTAINED** and Frontier Housing Inc.'s Motion for Summary Judgment be **OVERRULED.**

This 28th day of November, 2017.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge